# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Civil Case No. 07-11831

M.T.G., INC. d/b/a/ MATRIX TECHNOLOGIES          Hon. Anna Diggs Taylor
GROUP,

        Debtor.

_____/

CHARLES J. TAUNT, PLUNKETT &
COONEY, P.C., COMERICA BANK,
and MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.,
                                                 U. S. Bankruptcy
        Appellants/Appellees,            Case No. 95-48268-G
                                                 Chapter 7
   v.                                          Hon. Thomas J. Tucker

GUY C. VINING and TODD M. HALBERT,

        Appellees/Appellants.

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.

    This matter has come before this court on a cross-appeal, challenging the Bankruptcy court's

Opinion and Order issued on April 16, 2007. Appellants/Appellees Charles J. Taunt, Plunkett &

Cooney P.C. ("Plunkett & Cooney") and Comerica Bank ("Comerica") challenge the Bankruptcy

court's finding that Taunt committed fraud on the court.[1] Additionally, Comerica challenges the

Bankruptcy court's decision vacating three Comerica Orders, which the court found had been

---

[1]On May 23, 2008, the court entered a Stipulated Order Dismissing Claims Against Miller Canfield Paddock &
Stone, P.L.C., Without Prejudice and Without Costs or Attorney Fees.

obtained by fraud on the court.    Appellees Todd M. Halbert and Guy C. Vining argue that the Bankruptcy court erred when it found that Comerica did not commit fraud on the court. Further, they argue that the Bankruptcy court should have done the following: (1) disallowed Comerica's claims; (2) compelled Comerica to disgorge monies obtained by fraud; (3) awarded punitive damages and; (4) awarded attorney's fees.    For the reasons fully outlined below, the decision of the Bankruptcy court is affirmed.

## II.

### *Procedural background*

On  August 6, 1995, Matrix Technology Group (" M.T.G."), represented by Halbert, filed a petition for relief under Chapter 11.  *In re M.T.G., Inc.* 366 B.R. 730, 733 (Bkrtcy. E.D. Mich., 2007).  M.T.G.'s primary creditor was Comerica.  *Id.*  On February 8, 1996, the case was converted to a Chapter 7 proceeding and Taunt was appointed as the trustee.  *Id.*  The day after Taunt's appointment, he began discussions with Comerica about compensating his firm, Charles J. Taunt & Associates, P.C. ("Charles J. Taunt & Associates") for the liquidation of Comerica's collateral. *Id.*  This agreement (hereinafter the "Comerica Fee Agreement") was consummated by March 1996.[2] However, on February 12, 1996, Taunt filed a "Verified Statement of Disinterest for Trustee to Employ Counsel," attesting that his law firm, Charles J. Taunt & Associates, was disinterested and

---

[2]The Bankruptcy Code allows for a trustee to enter into a surcharge agreement.  In pertinent part 11 U.S.C. § 506(c) states:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all *ad valorem* property taxes with respect to the property.

could act as counsel for the trustee.[3] *Id.* Taunt did not modify this statement to reveal the Comerica Fee Agreement. *Id.*

On June 26, 1996, Taunt, now a shareholder at the law firm of Plunkett & Cooney, P.C. filed a new "Verified Statement of Disinterest for Trustee to Employ Counsel." *In re M.T.G., Inc.* 366 B.R. at 738. Again, the statement did not mention the Comerica Fee Agreement. *Id.* On August 21, 1996, the Bankruptcy court entered an Order substituting the Plunkett & Cooney firm for Charles J. Taunt & Associates as counsel for the trustee. *Id.* Appellants argue that while it is true that Taunt failed to disclose the fee agreement in any of the statements of disinterest, Taunt did disclose these agreements in the following three documents: (1) the April 9, 1996 Order Granting Trustee's Motion For Authority To Conduct Public Auction Free And Clear Of Liens, And To Transfer Liens To Proceeds Of Sale, Except For Millutensil Machine; (2) Taunt's April 15, 1996 Application for Authority to Compromise Claims Against the Becker Group, Inc.; and (3) paragraph 13 of the December 18, 1996 Joint First Interim Fee Application.

On August 29, 1996, the Bankruptcy court entered an Order Granting Application to Compromise Causes of Action Against Comerica Bank (the "Comerica Settlement Order."). *In re M.T.G., Inc.* 366 B.R. at 738. The Order authorized Taunt to compromise any and all claims that

---

[3]Taunt was required to disclose his relationship with Comerica pursuant to the Federal Rules of Bankruptcy Procedure, Rule 2014, which in pertinent part provides:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

the estate had against Comerica in exchange for a payment of $10,000.00 by Comerica.  *In re M.T.G., Inc.* 366 B.R. at 738.   Taunt did not mention the Comerica Fee Agreement in his Application to Compromise Causes of Action Against Comerica Bank.  *Id.*  On November 26, 1997, Taunt filed a motion, in which he "proposed a disbursement which would pay his and his attorneys' fees in full and then pay the balance to Comerica on account of the Section 507(b) "super-priority" damages it claimed."[4]  *Id.* at 740.

On February 26, 1998,  Halbert filed pleadings in the Bankruptcy court, arguing against  a request that Taunt pay Comerica's super-priority claim.  Further, he argued that the Comerica Settlement Agreement should be set aside pursuant to FRCP 60(b)(4).  With respect to the settlement agreement, Judge Tucker framed Halbert's argument as follows:

> Mr. Halbert's argument for setting aside the Comerica Settlement Order was based upon the agreement Mr. Taunt had made with Comerica at the outset of the Chapter 7 proceeding whereby Comerica agreed to compensate Mr. Taunt and his attorney for services associated with the liquidation of Comerica's collateral. Mr. Halbert contended that Mr. Taunt's fee arrangement with Comerica represented a clear conflict of interest which should have been disclosed both as part of the appointment process for Mr. Taunt and his counsel as well as in connection with Mr. Taunt's motion for authority to settle the estate's lender liability claims against Comerica.  *In re M.T.G.* 366 B.R. at 741.

On February 4, 1999, Bankruptcy Court Judge Ray Reynolds Graves issued an Opinion and Order holding:

---

[4]Section 507(b) of the Bankruptcy Code provides that a creditor who has been granted adequate protection in connection with its collateral shall have a priority claim over all other administrative claims for any loss resulting from the debtor's use of the collateral which was not compensated by the grant of adequate protection. In the context of a converted Chapter 11 proceeding, such a "super-priority" claim is prior in right to all other Chapter 11 administrative expenses but subordinate to all Chapter 7 administrative expenses. The court calculated the amount of Comerica's Section 507(b) claim in conjunction with Halbert's objection to Taunt's proposed distribution. It determined that Comerica was entitled to a Section 507(b) claim in the amount of $444,475.17.  *In re M.T.G., Inc.* 366 B.R. at 740 n53.

> . . . . that Mr. Taunt and his attorney failed to disclose the Comerica Fee Agreement in violation of Rule 2014 and ordered that they be sanctioned by reducing their fees by 25%. Judge Graves also determined that Comerica was entitled to a Section 507(b) claim in the amount of $444,475.17 and that Mr. Taunt "did not breach his fiduciary duty by not bringing any Chapter 5 cause of action." *In re M.T.G., Inc.* 366 B.R. at 742.

The court's Opinion and Order, however, did not address Mr. Halbert's argument that "Comerica's entire claim should be disallowed and that the Comerica Settlement Order should be set aside." *In re M.T.G., Inc.* 366 B.R. at 742. Moreover, the Opinion did not address the fraud on the court issue.

On March 3, 1999, Halbert appealed the Bankruptcy court's decision to this court and on September 7, 2000, the parties appeared before this court for oral arguments.[5] On October 10, 2000, this court issued an Order reversing the Bankruptcy court in-part by:

> (i) denying 100% of attorney fees to Appellee counsel, (ii) disqualifying the current Trustee [Taunt] for it's failure to disclose it's conflict of interest and (iii) vacating the settlement agreement ordered by the bankruptcy court.[6]

On October 19, 2000, Comerica filed a Motion to "Correct Order and Judgment or in the Alternative for Reconsideration" and, on November 1, 2000, Halbert filed a similar motion.[7] Oral arguments were heard on December 11, 2000.[8] This court refused to reconsider its prior ruling but agreed to clarify its earlier Order and issued an Order modifying its previous Order as follows:

> On September 7, 2000, after hearing arguments of counsel, for the

---

[5]Case No. 99-71031, Entry No. 1 and Document No. 42

[6]Case No. 99-71031, Document No. 42

[7]Case No. 99-71031, Document Nos. 43 and 45

[8]Case No. 99-71031

5

2:07-cv-11831-ADT-PJK   Doc # 47   Filed 01/14/09   Pg 6 of 17   Pg ID 1949

reasons stated on the record this Court reversed, in part,  the U.S. Bankruptcy Court by: (1) denying 100% of attorney fees to Appellee Taunt's counsel, (ii) disqualifying Charles a Taunt as Trustee for the reasons stated on the record, and (iii) vacating the order allowing the 507 (b) super-priority claim of Appellee Comerica Bank.  As to part (iii), the 507(b) claim is remanded to the U.S. Bankruptcy Court for further proceedings consistent with the Court's opinion from the bench on September 7, 2000. This Court affirmed the U.S. Bankruptcy Court's order and decision not to vacate the settlement order.[9]

Although this court found that there were conflicts of interest and a breach of fiduciary duties, this court never held that there was a fraud upon the court.[10]  Moreover, this court did not vacate the Settlement Order because it was of the opinion that the request for vacation was untimely.  *Halbert v. Taunt ( In re M.T.G. Inc.)* 291 B.R. 694, 698 (E.D. Mich. 2003).  Indeed, with respect to this point this court stated:

> I am concerned that a sanction such as this [denial of fees] doesn't rectify the injustices that might have been done by a Trustee in such conflict of interest and in constant breach of his fiduciary duty. However, because the request to reverse the settlement order has been untimely in the law, and I don't see a satisfactory explanation for that untimeliness, I cannot take action against the settlement, the approval of the settlement itself.  *In re M.T.G.,* 366 B.R. at 744.

Following this court's remand to the Bankruptcy court, Halbert filed pleadings with the Bankruptcy court requesting that: (1) the Comerica Claim Allowance Order, Comerica Relief from Stay Order and the Comerica Settlement Order be vacated because they were procured by fraud on the court; (2) Comerica's secured claim be disallowed because of such fraud; (3) Comerica be compelled to return monies acquired as a result of its fraud to the estate; and (4) attorneys' fees be

---

[9]Case No. 99-71031 Document No. 58.

[10]Tr. December 11, 2000, at 23.

6

awarded for committing the fraud upon the court. *Halbert,* 291 B.R. at 697, See also *In re M.T.G.* 366 B.R. at 745.

On January 29, 2002, Bankruptcy Court Judge Jeffrey R. Hughes issued an Opinion and Order rejecting Halbert's fraud on the court arguments for several reasons. First, the Bankruptcy court stated that this court's September 7, 2000, ruling–in which this court held that Halbert's motion to vacate the Comerica Orders was time barred–was the law of the case and, therefore, precluded any finding to the contrary. *In re M.T.G.* 366 B.R. at 746. Second, Judge Hughes concluded that Judge Graves had implicitly rejected Halbert's fraud on the court arguments on the merits in his February 4, 1999 Opinion and Order. *Id.* Finally, the Bankruptcy court held that in its previous ruling it had "arguably assessed the propriety of approving the Comerica Settlement Order under the more stringent standard imposed when the trustee is disinterested." *Id.*

Halbert appealed this decision and on April 10, 2003, this court issued an Opinion and Order, in which it recalled its previous mandate and remanded the fraud upon the court claim to the Bankruptcy court for specific consideration. *Halbert,* 291 B.R. at 740.

Upon remand, the Bankruptcy court ordered the parties to file motions for summary judgment regarding the fraud on the court issues and, during this same period of time, Vining was elected as the successor Chapter 7 trustee. *In re M.T.G.,* 366 B.R. 747. On April 16, 2007, Bankruptcy court Judge Thomas J. Tucker court issued an Opinion, where he concluded that Taunt and his counsel had committed a fraud upon the court. *Id.* at 748-753. As a result of this finding, the court vacated the April 19, 1996 Comerica Claim Allowance Order, the April 30, 1996 Comerica Relief From Stay Order, and the August 29, 1996 Comerica Settlement Order because these orders were procured by a fraud upon the court. *Id.* The court, however, did not conclude that Comerica

had committed fraud on the court. With respect to this point, the court stated:

> On the present record, and at this summary judgment stage, the Court is unable to make such a determination. Such claims are the subject of an adversary proceeding filed by Vining, on behalf of the estate and against Comerica, Taunt, their respective attorneys, and others, entitled *Vining v. Comerica Bank*, Case No. 03-4950. The Court concludes that such claims should be litigated and determined in the pending adversary proceeding. *In re M.T.G.,* 366 B.R. at 757.

Moreover, the Bankruptcy court found Halbert's and Vining's request for attorney's fees and punitive damages was premature at this stage in the litigation. Taunt, Comerica, Plunkett & Cooney, Halbert and Vining appealed the Bankruptcy court's April 16, 2007 decision. On October 11, 2007, pursuant to Joint Motion for Consolidation and Scheduling Order, this court entered an Order consolidating all the appeals.

### III.

### *Standard of Review*

#### *Jurisdiction and Standard of Review*

This Court has jurisdiction under 28 U.S.C. § 158(a) to hear Bankruptcy appeals. A Bankruptcy court's findings of fact must be upheld unless clearly erroneous. *In re Downs,* 103 F.3d 472, 476-77 (6th Cir.1996). A Bankruptcy court's conclusions of law are reviewed *de novo*. *Stephens Indus. Corp., Inc. v. McClung,* 789 F.2d 386, 389 (6th Cir.1986).

### IV.

### *Discussion*

#### *The law of the case*

The law of the case doctrine mandates that issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.

8

*Halbert,* 291 B.R. 694 at 697 (citations omitted).   The doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Id.* Here, it is clear that in this court's April 10, 2003 Opinion, it held that there had **not** been a clear determination regarding the fraud on the court issue, thus, warranting a remand specifically for a determination on that issue.  Indeed, this court stated:

> Because it is in the best position to determine whether fraud was committed upon it, the Bankruptcy Court should address a claim of fraud upon the court on remand. . . . For the reasons outlined above, therefore, this Court does recall its previous mandate and will remand again to the Bankruptcy Court for its specific consideration of the fraud upon the court claim. *Halbert,* 291 B.R. at 704

Moreover, when this court recalled its previous mandate, this court made it unequivocally clear that a fraud upon the court claim cannot be time-barred.  Regarding the timeliness issue, this court stated:

> . . . a claim of fraud upon the court is not subject to the time limitations of Rule 60(b).  To the extent that this Court may have previously ruled that the issue of fraud upon the court was time-barred under Rule 60(b), that contention would rely on "an incorrect legal standard, or appl[y] the law incorrectly."  *Halbert,* 291 B.R. at 700.

Accordingly, at the time of remand, the law of this case was that a fraud on the court claim was not time-barred and that there had not been a determination as to whether Taunt's actions constituted fraud on the court.

On Appeal, Appellants argue that the Bankruptcy court erred in addressing the fraud upon the court claim because it had been previously litigated and barred by the doctrine of *res judicata.* The doctrine of *res judicata* applies if the following are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which *578 should have been litigated in the prior action; and (4) an identity of

the causes of action." *Winget v. JP Morgan Chase Bank, N.A.* 537
F.3d 565, 577-578 (6th Cir. 2008).

Here, the doctrine does not apply. On remand, this court mandated that the Bankruptcy court give

specific consideration to the fraud on the court issue. At the time of remand, there simply was no

final judgment on this issue. Consequently, the argument that the Bankruptcy court erred when it

considered this issue is without merit and must be rejected.

*Fraud on the Court*

Appellants argue that the Bankruptcy court's finding of fraud on the court should be reversed

because the elements to establish such a claim are not present.[11]  They further argue that even if the

elements are present, the doctrines of waiver and estoppel bar this claim. This court disagrees and,

for the ensuing reasons, affirms the Bankruptcy court.

Regarding a claim for fraud on the court in relevant part, FED.R.CIV.P. 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise, or excusable
> neglect; (2) newly discovered evidence that, with reasonable
> diligence, could not have been discovered in time to move for a new
> trial under Rule 59(b); (3) fraud (whether previously called intrinsic
> or extrinsic), misrepresentation, or misconduct by an opposing party.
> . . .

The Sixth Circuit has held that fraud on the court is conduct: 1) on the part of an officer of the court;

2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the

truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when

one is under a duty to disclose; 5) that deceives the court. *Workman v. Bell* 227 F.3d 331, 336, (6th

---

[11]Plunkett & Cooney argues that it should be dismissed from this case because the allegations constituting fraud on
the court were in motion before Taunt became associated with the firm. This court rejects this argument, given the fact
that Taunt's second statement of disinterest, in which he again failed to disclose the Comerica Fee Agreement, was filed
while he was a member of the firm.

Cir. 2000) [citing *Demjanjuk v Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993)].  In *Computer Leasco, Inc. v. NTP, Inc.*194 Fed. Appx. 328, 338 (6th Cir. 2006), the Sixth Circuit stated that  these elements require "that the individual accused of perpetrating the fraud must have directly interacted with the court to prevent an adversary from presenting his case fully and fairly."  A lawyer is an officer of the court while preparing her client's case.  *Id.*

In the instant case – as the Bankruptcy court noted – it is undisputed that Taunt, the lawyers at Charles J. Taunt & Associates and the lawyers at Plunkett & Cooney at all relevant times were officers of the court.  Therefore, the first element is satisfied.  Further, the Bankruptcy court reasoned that when Taunt obtained Orders from the court without disclosing the Comerica Fee Agreement, this act was "directed to the judicial machinery itself" and not a private party.  *In re M.T.G.,* 366 B.R. at 749.  Hence, the court found that this element was also met.  This court is in accord with this finding.

With respect to the third element, the bankruptcy court could not make a finding of intent and "for the purposes of its decision concluded that neither Taunt or his attorney's intended to deceive [the] court."  *In re M.T.G.,* 366 B.R. at 750.  The court, however, held that the conduct of Taunt and his attorneys was "in reckless disregard for the truth and in reckless disregard for their disclosure of duties."  *In re M.T.G.,* 366 B.R. at 750.  This conclusion is consistent with this court's prior conclusions and the findings of Judge Graves and Judge Hughes.

In Judge Graves' February 4, 1999 Opinion, he stated that Taunt made a "conscious decision, after researching the issue not to disclose the fee agreement.[12]"  In this court's September 7, 2000 bench opinion–referring to Taunt's failure to disclose the Comerica Fee Agreement- this court stated

---

[12]Judge Graves' February 4, 1999 Opinion at 14.

11

that the conduct was a "serious, egregious conflict of interest and breach of fiduciary duty.[13]" Judge

Hughes, in his January 24, 2002 Opinion, wrote:

> . . . . while I am satisfied that Mr. Taunt's conduct in connection with
> the entry of the three Comerica orders is sufficient to set aside all
> these orders on the basis that there has been a fraud on the court, I am
> nonetheless compelled to let each of these orders stand because of
> prior court rulings. . . . . However, were it not for the district court
> rulings, I would set aside these two orders as being procured by fraud
> on the court. . . . .[14]

Moreover, Judge Tucker in his Opinion explained why he found the non-disclosure of the

Comerica Fee Agreement to be particularly reckless:

> A stark illustration of Taunt's undisclosed conflict of interest is that
> under the Comerica Fee Agreement, Taunt's firm was to be paid on
> an hourly-rate basis by Comerica to review and analyze Comerica's
> secured claim against the estate.  This aspect of the fee agreement
> alone destroyed Taunt's disinterestedness. . .  *In re M.T.G.,* 366 B.R.
> at 751.  Then, after making the undisclosed fee agreement, Taunt and
> his counsel signed a stipulation and obtained from the Court the
> Comerica Claim Allowance Order.  *In re M.T.G.,* 366 B.R. at 751.
> That Order allowed Comerica's $5.3 million secured claim and
> determined that Comerica had a "valid and properly perfected
> security interest and lien on all property of Debtor's estate"except
> Chapter 5 causes of action.  At a minimum, it was "reckless" of Taunt
> and his counsel not to fully disclose the Comerica Fee Agreement
> before he obtained this Order.  *Id.*

Appellants argue that it was inappropriate for the Bankruptcy court to make a finding of

reckless disregard in the summary judgment context.  This court disagrees.  In *U.S. v. West,* 520 F.3d

604, 611 (6th Cir. 2008), the Sixth Circuit held that an affidavit prepared by an affiant, that does not

accurately reflect the facts known to him at the time the affidavit is sworn, evinces a reckless

---

[13]Tr. September 7, 2000, at 35.

[14]Judge Hughes' January 24, 2002 Opinion at 16, 18.

disregard for the truth.  Here, it is undisputed that, when Taunt signed each statement of disinterest, he failed to reveal the Comerica Fee Agreement.  Indeed, Judge Hughes found that Taunt knew of this agreement when he participated in the entry of each of the Comerica Orders, but nonetheless chose not to disclose the agreement to the court as part that process.[15]  Thus, it's clear that there is sufficient evidence in the record to support a finding that Taunt and his attorneys acted with a reckless disregard for the truth.

Further, Appellants argue that Taunt's disclosure of the agreement in other court documents precluded a finding that he had a reckless disregard for the truth.  In addressing this argument, the Bankruptcy court stated that this argument was "plainly without merit."  *In re M.T.G.,* 366 B.R. at 754.  Specifically, the court stated:

> The Court has described each disclosure by Taunt upon which Respondents rely, in Parts I(D) through I(F) and I(J) of this opinion. As that discussion shows, Taunt's disclosures disclosed virtually nothing, and they certainly fell far short of properly disclosing the Comerica Fee Agreement and its terms. And the last of these disclosures, buried in the first interim fee application that Taunt's counsel filed on December 18, 1996, came almost four months after the last of the three orders in question was entered. *In re M.T.G.,* 366 B.R. at 754.

Judge Hughes also thought that total disclosure was necessary as illustrated by the following:

> Had Mr. Taunt made this disclosure and had I been the presiding judge, I would not have given him the benefit of the business judgment rule.  Rather, I would have required Mr. Taunt to actually establish to my satisfaction that his decision to settle the lender liability claims with Comerica under the terms reached was in fact reasonable.  Therefore, Mr. Taunt's failure to disclose this conflict would have caused me to improperly assess the propriety of entering the proposed Comerica Settlement Order and it is for this reason I

---

[15] Judge Hughes' January 24, 2002 Opinion at 10.

13

come to the conclusion that a fraud has been perpetrated. [16]

Thus, it is clear that, even assuming that Taunt had made prior disclosures, these revelations did not put the court on adequate notice of the Comerica Fee Agreement. Accordingly, this court agrees with Judge Tucker's finding that the conduct of Taunt and his attorneys was, at a minimum, in reckless disregard for the truth and that this third element has been met.

Moreover, the fourth element, requiring concealment when one is under a duty to disclose, is also met. Judge Graves found that Taunt's failure to disclose was in violation of his duties under FED R.BANK.P. 2014 and § 327.[17] Indeed, Judge Graves stated that Taunt was duty bound to file an amended verified statement, fully disclosing the terms of fee application. Therefore, this court agrees with the Bankruptcy court that this element has also been satisfied.

This court is also convinced Taunt and his attorneys deceived the court, which fulfills the fifth element for establishing a fraud on the court claim. Judge Graves stated that "the court can determine disinterestedness only if all potential conflicts are fully disclosed." Hence, based on that alone, this court can conclude that the Bankruptcy court was deceived, since it made rulings on motions and rendered Orders without full knowledge of Taunt's actual conflicts of interests. In considering this element, Judge Tucker wrote:

> Taunt and his attorneys did deceive the bankruptcy court, when they obtained the three orders in question without disclosing the fee agreement, because each of the orders benefitted Comerica. When he sought the orders in question, Taunt failed to disclose to the bankruptcy court that he was acting under a "serious, egregious conflict of interest." Judge Graves certainly did not know this when he entered the orders in question, nor did he know about the

---

[16]Judge Hughes January 24, 2004 Opinion at 12-13.

[17]Judge Graves February 4, 1999 Opinion at 10.

> Comerica Fee Agreement or the terms of that agreement. It seems
> inconceivable that Judge Graves would have entered any of these
> orders at all, much less without a hearing, had Taunt fully disclosed
> his fee agreement with Comerica. Thus, the bankruptcy court was
> deceived when it entered these orders. *In re M.T.G.* 366 B.R. at 752-
> 753.

Hence, evidence in the record clearly shows that this fifth element has also been met.

Another argument that Appellants make is that there can be no fraud on the court, when Appellees were not deprived of an opportunity to fully litigate their claims.  As stated *supra,* in *Computer Leasco, Inc,* 194 Fed.Appx. at 338, the Sixth Circuit stated the elements of fraud on the court "require that the individual accused of perpetrating the fraud must have directly interacted with the court to prevent an adversary from presenting his case fully and fairly."  This court is persuaded that there is ample evidence in the record supporting the fact that Appellees were denied an opportunity to fully and fairly present their case.  Despite Halbert's efforts, the Bankruptcy court did not know of the Comerica Fee Agreement.  Hence, the court was  put in a position where it made decisions and issued orders without being fully informed of Taunt's actual conflicts.  Indeed, Judge Hughes stated that "Mr. Taunt's failure to disclose this conflict would have caused me to improperly assess the propriety of entering the proposed Comerica Settlement.[18]"  It is likely that had the Bankruptcy court known about the Comerica Fee Agreement, that the Comerica Settlement Order, which the Bankruptcy court has now vacated, would not have been entered.  Consequently, this court is not persuaded by Appellants' argument and affirms Judge Tucker's finding that Taunt and his attorneys committed a fraud on the court.

Appellants also contend that Halbert knew about the Comerica Fee Agreement and is,

---

[18]Judge Hughes January 24, 2004 Opinion at 12-13.

therefore, estopped from bringing a fraud on the court claim.  This court does not find this argument

to be convincing.  Like Judge Tucker, this court is also in agreement with Judge Hughes' analysis

of this issue.  Judge Hughes stated:

> I also conclude that Mr. Halbert is not estopped from bringing this
> motion because he had consented to the entry of the three orders
> notwithstanding his prior knowledge of the surcharge agreement
> between Mr. Taunt and Comerica Bank. . . . The issue which Mr.
> Halbert raises is directed towards protecting the integrity of the
> judicial system itself.[19]

Therefore, public policy demands that the fraud on the court claim remained viable regardless of

what Halbert knew or fully explained that he understood.  Moreover, public policy is also served by

the Bankruptcy court's vacation of the three Orders that it found to be procured by fraud on the

court. [20] Although this remedy may seem harsh, as Comerica submits, this is a necessary remedy to

preserve the integrity of the court.

*Appellees' Halbert's and Vining's Arguments on Appeal*

Appellees argue that this court should reverse the Bankruptcy court and hold that Comerica

committed fraud on the court.  This court is unpersuaded by Appellees' argument.  A necessary

element for a fraud on the court claim to exist is that the alleged wrongdoer be an officer of the

court. *Workman,* 227 F.3d 336.  Here, it is undisputed that Comerica is not an officer of the court.

Indeed, as Judge Tucker explained, the duty to disclose the Comerica Fee Agreement was a duty

owed by Taunt and his appointed counsel.  *In re M.T.G.,* 366 B.R. at 757.  Even given these facts,

the bankruptcy court reserved its determination of the viability of these claims.  Hence, this court

---

[19]Judge Hughes January 24, 2004 Opinion at 19 n. 25.

[20]Appellants' waiver argument must fall for the same reasons.

16

will not disturb the Bankruptcy court's ruling on this issue and agrees that these claims should be the subject of the adversary proceeding filed by Vining. *In re M.T.G.,* 366 B.R. at 757. Likewise, the court agrees that Appellees' request for punitive damages and attorney fees was premature at the summary judgment stage and is in accordance with the Bankruptcy court's decision to deny this request, subject to renewal at a later time and date. *Id.* at 758.

## V.

*Conclusion*

IT IS ORDERED that for the foregoing reasons, the decision of the Bankruptcy court is **AFFIRMED**.

IT IS SO ORDERED.

DATED:  January 14, 2009                                      **s/Anna Diggs Taylor**
                                                                                 ANNA DIGGS TAYLOR
                                                                                 UNITED STATES DISTRICT JUDGE

---

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 14, 2009.

s/Johnetta M. Curry-Williams
Case Manager

17